Pennsylvania Power & Light Company *v.* P. U. C.
and Secretary of Defense of the United States,
Intervenor.

Argued January 9, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert H. Young,* with him *Allen W. Stewart, Vincent Butler* and, of counsel, *Morgan, Lewis & Bockius,* for appellant.

*Philip P. Kalodner,* Counsel, with him *Daniel F. Joella,* Assistant Counsel, and *Dominic J. Ferraro,* Assistant Counsel, for appellee.

OPINION BY JUDGE KRAMER, March 14, 1973:

This opinion and accompanying order will be dispositive of cross motions. The Pennsylvania Public Utility Commission (PUC) filed a motion to quash the appeal of the Pennsylvania Power & Light Company (PP&L) from an order of the PUC dated March 28, 1971. Thereafter, PP&L filed a motion to dismiss the PUC's motion to quash. This Court restricted the argument to the "cross motions," and postponed argu-

ment on the merits pending the determination of the motions.

Following the filing of the PUC order, which is an exhaustive adjudication into the many facets of an electric utility rate case initiated by the filing for increased rates by PP&L, PP&L filed, on April 27, 1972, an appeal in this Court, in which it set forth its specifications of error alleged to have been committed by the PUC. Because there appeared to be some misunderstanding between the parties as to exactly what was contained in the specification of errors filed by PP&L (as was evidenced both in their briefs and at oral argument), we set forth verbatim those paragraphs of the Petition on Appeal which are pertinent to our ruling on the motions here involved:

"6. Appellant assigns as error the findings contained in the Order under the headings 'Accrued Depreciation,' 'Fair Value,' and 'Annual Depreciation and Amortization' and paragraphs numbers 1 and 2 of the Order on the following grounds:

"(i) The Commission erred in applying its adopted policy for determining accrued and annual depreciation in rate proceedings which makes it impossible for the Appellant to recover its original cost investment in utility property over the life of such property by way of annual depreciation charges. Appellant's property is thereby confiscated in violation of the Constitution of the Commonwealth of Pennsylvania and of the Constitution of the United States.

"(ii) The Commission erred in adopting reductions in average service lives of Appellant's utility property without providing for a concurrent increase in annual depreciation expense to permit Appellant to recover its original cost investment in such property over the service life of such property.

"(iii) The Commission erred in adopting the 'Life Span' method in determining an increased accrued de-

preciation for Appellant's utility property without providing a concurrent increase in annual depreciation allowance to permit Appellant to recover its original cost investment in such stations over the service life of such stations.

"(iv)   The Commission erred in the determination of accrued depreciation of Appellant's utility property in excess of Appellant's actual experienced depreciation recovery of its original cost.

"(v)   The Commission erred in the determination of accrued depreciation of Appellant's utility property in excess of that established by the actual service life experience of such property.

"(vi)   The Commission erred in determining an increased accrued depreciation for Appellant's utility property by eliminating recognition of realizable salvage.

"(vii)   The Commission erred in determining that Appellant's original cost rate base at December 31, 1970, was only $850 million in as much as it increased the accrued depreciation on Appellant's utility property by almost $39 million without recognition of the deficiency thereby created in Appellant's recovery of its original cost and without providing any means for the recovery of such original cost investment.

"(viii)   The Commission erred in determining that the fair value of Appellant's utility property used and useful in providing electric public utility service at December 31, 1970, was $969 million in so far as that finding reflects the errors in the Commission's determinations of accrued depreciation and the original cost rate base measure referred to in preceding paragraphs hereof.

"(ix)   The Commission erred in allowing $33,570,-075 for annual depreciation expense in so far as said allowance:

"(a) fails to provide for the recovery of Appellant's original cost investment in its utility property over the service life of such property;

"(b) fails to provide for amortization of the deficiencies created in Appellant's accounts relating to the recovery of its original cost investment caused by the errors referred to in the preceding paragraphs hereof, in the determination of accrued depreciation;

"(c) fails to include any amount for amortization of Appellant's remaining investment in two of its steam generating stations being retired prematurely in 1972 as a result, *inter alia*, of environmental requirements relating to air pollution recently established by the Commonwealth of Pennsylvania;

"(d) treats positive and negative salvage as an operating expense instead of recognizing them as part of the determination of accrued and annual depreciation as required by the Commission's own accounting regulations set forth in the Uniform System of Accounts for Class A and B utilities.

"7. On the basis of all the foregoing, paragraph numbers 1 and 2 and the findings under the headings 'Accrued Depreciation,' 'Fair Value,' and 'Annual Depreciation and Amortization' of the Commission's Order dated March 28, 1972 reflect errors of law, lack substantial evidentiary support, are contrary to the substantial probative evidence and are therefore unreasonable."[1]

---

[1] Paragraphs 1 and 2 referred to in the PUC Order read:

"1. That complaints listed in the caption of this order be and are hereby sustained to the extent indicated by the disallowance of $12,850,000 of the proposed rate increase and as set forth under the heading 'Rate Structure'.

2. That forthwith, respondent file, effective for service rendered on or after the date of this order or within 30 days thereafter, as respondent may elect, a supplement containing acceptable rates to provide total annual operating revenues of $304,958,000 (including

In support of its motion to quash, the PUC contends that the specifications of error, set forth above, raised only one issue, namely, PP&L's allegation of confiscation based upon the PUC's use of the "reserve requirement method" in estimating and finding annual and accrued depreciation. PUC argues that PP&L has not alleged any error concerning "the ultimate issue—the fairness of the *ultimate return* allowed the appellant by the order appealed from." (Emphasis in original.) PUC further argues that it is solely the financial impact of the PUC's order which must be considered in determining whether or not PP&L has been prejudiced or harmed.

PP&L, in its motion to dismiss, contends first that the PUC's motion to quash was not timely filed because of Section 1105 of The Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1435; and secondly, that the PUC's motion to quash is without proper basis as a matter of law.

The Public Utility Law at Section 1101(a), 66 P.S. §1431(a), states: "Within thirty days after the service of any order of the commission . . . any party to the proceedings affected thereby may appeal therefrom. . . ."

Section 1101(b), 66 P.S. §1431(b) states: "All appeals shall be by petition, setting forth specifically and concisely . . . errors assigned to the order of the commission. . . . Each error relied on must be specified particularly and set forth in a separate numbered paragraph of the petition."

Section 1105, 66 P.S. §1435 states in pertinent part: "An answer may be filed by the commission within thirty days after being served with notice of the taking of an appeal. Leave may also be given by the court

all other electric revenues but not revenues from the State Tax Adjustment Surcharge), as computed and allowed herein at the level of operations at December 31, 1970."

to any other party to the record to file an answer. Upon the filing of an answer by the commission, or if no such answer is filed within thirty days after service of notice of appeal, the case shall be considered at issue. . . ."

The Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, as amended, 17 P.S. §211.-101 et seq. transferred jurisdiction of these appeals from the Superior Court to this Court.

Although we agree with PP&L that Section 1105 of the Act would preclude the PUC from filing an answer three months late, we find no prohibition, and PP&L has offered none, to the PUC's filing a motion to quash more than four months after the filing of the appeal by PP&L. Rule 33 of the Pa. Supreme Court, applicable in this case by virtue of Commonwealth Court Rule 116, permits the filing of a motion to quash any time prior to the time fixed for the filing of the appellee brief. Rule 32 of the Commonwealth Court does not require appellee to file a brief until fifteen days after service of appellant's brief; therefore it was timely. *See Drabant v. Cure,* 274 Pa. 180, 118 A. 30 (1922).

Interestingly, PP&L, in its motion to dismiss, states that it is not challenging the PUC's "findings on operating expenses, taxes, return, nor the two components of the return, rate base and rate of return." This statement does not jibe with the Petition on Appeal quoted above. However, assuming that PP&L's statement in its motion is correct, the PUC contends that PP&L has precluded itself from a justiciable issue because (1) annual depreciation is an "operating expense" and (2) an accrued depreciation error directly affects the rate base calculation, which is not contested by PP&L. The PUC's contention in this regard must fall because the PUC in its adjudication designated "Operating Expenses" as a separate and distinct item from "Annual Depreciation and Amortization," under

a general heading entitled "Operating Revenue Deductions." ("Taxes, Other than Income Taxes" and "Income Taxes" are the other two items designated under the same general heading.)[2]   Therefore it was entirely proper for PP&L to follow the PUC's terminology in its specifications of error.

Furthermore, it is conceivable that if the PUC did make just the one error, in its allowance for annual depreciation, the only changes which would have to be made in the resultant cost of service figures would be (1) Annual Depreciation and Amortization, (2) *Total* Operating Revenue Deductions, and (3) *Total* Revenues.   If that were the case, then PP&L's statement in its motion would be technically correct, i.e., operating expenses, taxes, return, rate of return and rate base would remain unchanged.   To prohibit PP&L from challenging such an error would result in either denying PP&L the return found by the PUC to be proper or could, if proven from the record, result in confiscation.

---

[2] In its order, the PUC statistically summarized the case as follows :

TABLE XIII
Allowable Operating Revenues
(By Commission)
(Thousands)

*Operating Revenue Deductions:*

|  | $ |
|---|---|
| Operating Expenses | 166,877 |
| Annual Depreciation and Amortization | 34,294 |
| Taxes, Other Than Income Taxes | 10,575 |
| Income Taxes | 21,700 |
| Total | 233,446 |

*Return:*

| 7.38 percent on Fair Value of $969,000,000 | 71,512 |
|---|---|
| Total Allowable Operating Revenues | 304,958 |

It should be remembered that the Legislature, in the Public Utility Law (Section 1106) has granted to this Court the authority to vacate an order of the PUC in whole or in part and to remand the matter back to the PUC with specific instructions to correct an error of law "as justice may require." See 66 P.S. §1437.

Turning now to the Petition on Appeal and assuming (as we must in ruling on this motion to quash) for purposes of making the determination herein, that the PUC was in error in its application of accrued depreciation to the "original cost" and "fair value" rate bases, and further was in error in its determination of annual depreciation expense, the assignments of error stated in PP&L's petition on appeal adequately meet the requirements of Section 1101(b) of the Public Utility Law. If PP&L is correct in the assignments of error, as stated in paragraph six of its Petition on Appeal, then the assignment of error stated in paragraph seven of its petition naturally follows. In such a case, paragraphs one and two of the Commission's order would be in error.

Our reading of the Commission's order and the Petition on Appeal leads us to conclude that there is more to the Petition on Appeal filed by PP&L than as characterized by the PUC in its motion to quash. The law in this Commonwealth is very clear that annual depreciation[3] is an operating expense[4] representing the

---

[3] " 'Depreciation,' as applied to depreciable electric plant, means the loss in service value not restored by current maintenance, incurred in connection with the consumption or prospective retirement of electric plant in the course of service from causes which are known to be in current operation and against which the utility is not protected by insurance. Among the causes to be given consideration are wear and tear, decay, action of the elements, inadequacy, obsolescence, changes in the art, changes in demand and requirements of public authorities."

[4] Designated "Operating Revenue Deductions" by the PUC in its adjudication.

consumption of property in rendering service. A utility is entitled, under the law, to recover from the rate payer the original cost of its depreciable plant. *See Penn Sheraton v. Pennsylvania PUC,* 198 Pa. Superior Ct. 618, 184 A. 2d 324 (1962); *Scranton Steam Heat Company v. Pennsylvania PUC,* 194 Pa. Superior Ct. 143, 167 A. 2d 693 (1960); *Harrisburg Steel Corporation v. Pennsylvania PUC,* 176 Pa. Superior Ct. 550, 109 A. 2d 719 (1954). Furthermore, both accrued depreciation and the allowance for annual depreciation should have some consistent or compatible basis under the law.

The PUC argues that unless the utility specifically assigns as an error in its appeal that its return is affected by the alleged error, the appeal must be quashed. The PUC cites the case of *Federal Power Commission v. Hope Natural Gas Company,* 320 U.S. 591, 64 S. Ct. 281 (1944) in support of its argument. We certainly agree with the holding of *Hope* that a rate order of a regulatory agency should be viewed in its entirety to determine whether it is just and reasonable, and that the method used by the agency in arriving at the result may not necessarily be reviewable. However, the holding by the court in *Hope* was utilized in determining an issue of whether "original cost," "trended original cost" or "reproduction cost new," as methods, should be used in determining the rate base (the net value of the utility's plant); and it was not used to determine an issue involving an alleged error in the agency's allowance of an item of expense in the cost of service. As we read the *Hope* decision, the Court assumed that the total revenues would recover all of the utility's operating expenses. For example, the Court stated: "But such considerations aside, the investor interest has a legitimate concern with the financial integrity of the company whose rates are being regulated. From the investor or company point of view it is important

that there be enough revenue not only for *operating expenses* but also for the capital costs of the business." (Emphasis added.) 320 U.S. at 603, 64 S. Ct. at 288. If the PUC makes an error in any of the expenses which the utility is entitled to recover, this error will be reflected in the total allowable revenues. As pointed out above, PP&L made specific reference to the alleged error in annual depreciation as being reflected in total allowable revenues as set forth in paragraph two of the Commission's order.

In other words, if the PUC made an error in allowing insufficient annual depreciation, it is the revenues (and the resultant rates paid by the consumers), and not return, which must be increased to correct the error. If PP&L is not permitted to proceed with its case on the merits and the error is thereby not corrected, then PP&L is faced with one of two alternatives. Either PP&L will not recover its investment in plant through the annual depreciation to which it is entitled by law, or its return which the PUC has found to be just, will not be realized, because the revenues the PUC allowed will not cover both. In either event, PP&L would be injured financially.

As stated hereinbefore, if we assume that the PUC has made an error in its determination of annual depreciation allowance, then it is conceivable that PP&L has been prejudiced or harmed; and it is even possible that confiscation of PP&L property could be proven from the record made in this case. If confiscation is an issue, then this Court may make independent findings on appeal within our discretionary powers. *See Duquesne Light Company v. Pennsylvania PUC*, 176 Pa. Superior Ct. 568, 107 A. 2d 745 (1954). Obviously we do not decide that issue on the merits in ruling on a motion to quash.

As was stated in *Smith v. Pennsylvania PUC*, 174 Pa. Superior Ct. 252, 255, 101 A. 2d 435, 437 (1953):

"In order to have the right of appeal an appellant must be (1) a party to the proceedings, and (2) affected thereby." Obviously, PP&L in this case has a direct, immediate and substantial interest in the proceedings and therefore has standing.

In summary then, we hold that PP&L's Petition on Appeal adequately meets the requirements of Section 1101(b) of the Public Utility Law and further, that the motion to quash of the PUC must be dismissed.

Based on the above discussion, we

## ORDER

AND NOW, this 14th day of March, 1973, the Motion To Dismiss the Pennsylvania Public Utility Commission's Motion To Quash is granted, and it is ordered that this case be set down for argument at the next available argument list before this Court.

---

DISSENTING OPINION BY JUDGE WILKINSON, March 14, 1973:

As set forth in appellee's brief in support of its motion to quash, the question here presented is: "Assuming, arguendo, that the Commission did err in the estimates of accrued and annual depreciation, would this, without more, give appellant basis or standing to appeal the Commission's order?" In my opinion, this question must be answered in the negative and, therefore, I must respectfully dissent.

In my opinion, this very question has been decided both by the Supreme Court of the United States and by the Supreme Court of Pennsylvania. In the case of *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 64 S. Ct. 281, 88 L. Ed. 333 (1944), the Federal Power Commission fixed a rate to be charged by Hope Natural Gas Co. The Company appealed to the Circuit Court, challenging the methods used to determine the rate base. The Circuit Court disapproved

the methods used and remanded the case to the Commission for further proceedings. On appeal to the United States Supreme Court, the Circuit Court was reversed, the Supreme Court stating: "And when the Commission's order is challenged in the courts, the question is whether that order 'viewed in its entirety' meets the requirements of the Act. . . . Under the statutory standard of 'just and reasonable' it is the result reached not the method employed which is controlling. (citing cases). It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences."

In *Philadelphia Transportation Co. v. Pennsylvania Public Utility Commission, et al.,* 350 Pa. 373, 39 A. 2d 372 (1944), the Philadelphia Transportation Co. had filed rates with the Pennsylvania Public Utility Commission. The City of Philadelphia filed objections. The Commission suspended the rates, held hearings, determined the existing rates were just and reasonable and, therefore, disallowed the new rates. On appeal to the Superior Court, that Court ruled that the Commission had valued the properties inadequately, but did not change the rates which the Commission had approved. The Commission and the city filed petitions for allowance of an appeal to our Supreme Court. The Supreme Court refused the petitions for allowance of appeal, stating: "With the existing rate remaining in

effect, it is of no legal consequence in this proceeding, that the Commission and the learned Court differed in their valuations or in their permissible rate of earnings thereon. No useful purpose can be served by allowing the appeal for the discussion of these subjects. If in the future increased rates are proposed, such matters may become relevant; a review now would be merely academic."

It seems clear to me that the basic issue in any appeal by a regulated agency from a fixing of its rates by the Pennsylvania Public Utility Commission is whether the rate fixed allows a reasonable return. This being the case, since the appellant has not alleged that the rate it is directed to fix does not allow a reasonable return, appellee's motion to quash should be allowed. It is not sufficient that a higher rate could have been justified.